UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LINDA SHAW, as next friend of J.S., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | 3:16-cv-00575-RJC-VPC<br><br>**ORDER** |

This case arises out of an insurer's alleged breach of an uninsured motorist policy contract following an automobile accident. Pending before the Court is Defendant State Farm's Motion for Partial Summary Judgment. (Mot. Summ. J., ECF No. 45.) For the reasons given herein, the Courts grants the Motion.

I.  **FACTS AND PROCEDURAL HISTORY**

The following facts are largely taken from State Farm's motion and are not disputed by Plaintiff.

On July 23, 2014, Jillian Shaw, a minor, was involved in an automobile accident, which caused her bodily injuries and required her to incur medical expenses. (Compl. ¶¶ 7–8, ECF No. 1 at 15; Mot. Summ. J. 3, ECF No. 45.) At the time of the accident, Plaintiff Linda Shaw ("Plaintiff")—Jillian's grandmother and legal guardian—had a State Farm automobile insurance policy that included uninsured motorist ("UIM") coverage of up to $250,000 per person and

medical payments coverage ("MPC") of up to $5,000 for eligible insureds. (Compl. ¶¶ 9–10; Mot. Summ. J. 4.)

Following the accident, Jillian received treatment for her physical injuries through March 3, 2015. (Mot. Summ. J. 4; Pl.'s Demand Letter 2–5, ECF No. 45-4 at 11–14.) She then treated with Dr. JoAnn Lippert for post-traumatic stress disorder ("PTSD") on July 9, July 30, and August 6, 2015. (Mot. Summ. J. 4; Pl.'s Demand Letter 5–6.) Jillian had a fourth appointment scheduled with Dr. Lippert for August 19, but she failed to show. (Mot. Summ. J. 4; Dr. Lippert's Session Notes 5, ECF No. 45-5 at 6; Linda Shaw Dep. 55:15–24; ECF No. 45-8.) As a result of her treatment for physical injuries and PTSD, Jillian incurred a total of $16,710.98 in medical expenses. (Mot. Summ. J. 4; Pl.'s Demand Letter 6–7.)

In or around January 2016, the insurer of the individual who caused the accident settled Jillian's bodily injury claim for $100,000. ((Mot. Summ. J. 4; Settlement Letter, ECF No. 45-6.) Jillian also recovered $5,000 from State Farm, the MPC limit on Plaintiff's policy. (Mot. Summ. J. 4; Def.'s Letter of May 31, 2016, ECF No. 45-4 at 6.)

On May 17, 2016, Plaintiff's counsel sent a letter to State Farm, detailing Jillian's damages and demanding the $250,000 policy limit on Plaintiff's UIM coverage. (Demand Letter, ECF No. 45-4 at 10–19.) State Farm then evaluated the demand, applied an offset of $105,000, and offered a UIM payment of $4,000 to settle Plaintiff's claim. (Mot. Summ. J. 4–5; Def.'s Case Notes 10–11, ECF No. 45-7 at 7–8; Def.'s Letter of May 31, 2016, ECF No. 45-4 at 6.) Plaintiff's response to State Farm's initial settlement offer reveals the crux of the present dispute: "Could you please provide, consistent with damages allowed by Nevada law, how you evaluated the case *in terms of Miss Shaw's continuing issues with PTSD.*" (Def.'s Letter of June 16, 2016, ECF No. 45-4 at 9 (emphasis added).) State Farm answered Plaintiff's letter on June 21, 2016, explaining that it based its offer on all the documentation Plaintiff had provided, and that it had

applied the $105,000 offset consistent with insurance payments already received. State Farm also indicated that it had concerns about attributing Jillian's chipped teeth and PTSD to the automobile accident because she had not sought treatment for these particular issues until approximately six months and one year after the accident, respectively. (Def.'s Letter of June 21, 2016, ECF No. 45-4 at 4–5.) Plaintiff responded on July 27, 2016, offering explanations for the delays in treatment and asking several more pointed questions: "In your evaluation of this case are you discounting any of the incurred medical bills? What value are you placing on past pain and suffering? What value are you placing on future pain and suffering? What value are you placing on her diagnosis of PTSD and its future consequences?" (Pl.'s Letter of July 27, 2016, ECF No. 45-4 at 7–8.)

State Farm's next communication with Plaintiff's counsel was a telephone call on August 17, 2016. During that call, State Farm's representative informed Plaintiff's counsel that State Farm would include the future expenses for Jillian's two chipped teeth at the estimated rate provided by her dentist, which was in the range of $289 to $399 per tooth. State Farm also stated that all the medical expenses for which Plaintiff provided documentation—including the treatment for PTSD—were fully included in its evaluation of Jillian's damages. However, State Farm took the position that the documentation did not support the need for future expenses, predominantly because Jillian had not received any treatment for PTSD for approximately one year. (Def.'s Case Notes 7–8, ECF No. 45-7 at 4–5.) Plaintiff's counsel responded that State Farm was being unreasonable, that he would not decrease his demand for the UIM policy limit of $250,000, and that he would proceed with suing State Farm for bad faith. (*Id.*)

The following day, on August 18, State Farm sent a final letter to Plaintiff's counsel, confirming their discussion from the day before, and extending an amended settlement offer of $6,000. (Def.'s Letter of August 18, 2016, ECF No. 45-4 at 2–3.) In this letter, State Farm

reiterated that their most recent evaluation included future medical expenses for Jillian's chipped teeth in the range of $289 to $399 per tooth. State Farm also stated that it had "included the actual medical expenses for the PTSD being claimed. The last visit was 8/6/15. Per our discussion today [sic], there are no additional visits beyond this last visit. As discussed, the medical documentation provided does not support the need for additional future treatment." (*Id.*)

Plaintiff then filed this case in the Second Judicial District Court of the State of Nevada, Washoe County, on August 24, 2016. (Compl., ECF No. 1 at 13.) Plaintiff asserted three claims under Nevada law: (1) breach of contract; (2) bad faith; and (3) violation of NRS 686A.310 *et seq*. State Farm removed on October 4, 2016.

State Farm now moves for summary judgment on Plaintiff's second and third claims for bad faith and violation of NRS 686A.310 *et seq*.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is

a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III. ANALYSIS

### a. Bad Faith

> Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. The duty violated arises not from the terms of the insurance contract but is a duty imposed by law, the violation of which is a tort.

*U. S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). Where this implied covenant of good faith and fair dealing arises under the common law, and not the insurance contract, "[a] violation of the covenant gives rise to a bad-faith tort claim." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009). Accordingly, in the insurance context, a claim for tortious breach of the implied covenant of good faith and fair dealing *is* a claim for bad faith. *See Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F. Supp. 1237, 1242 (D. Nev. 1994); *Sherwin v. Infinity Auto Ins. Co.*, No. 2:11-CV-00043-APG, 2013 WL 5918312, at *3 (D. Nev. Oct. 31, 2013), *aff'd*, 639 F. App'x 466 (9th Cir. 2016).

To prove a claim of insurance bad faith, the plaintiff must establish that the insurer denied the insured's claim, without any reasonable basis, and with "knowledge or awareness of the lack of any reasonable basis to deny coverage, or [with] reckless disregard as to the unreasonableness of the denial." *Schumacher*, 467 F. Supp. 2d at 1095; *see also Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998), *opinion modified on denial of reh'g*, 979 P.2d 1286 (1999). No insurance bad faith claim lies where the insurer has a reasonable basis

for challenging a claim. *See Miller*, 212 P.3d at 324. "Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

Plaintiff appears to base her bad faith claim on two main arguments. First, she asserts, largely based on evidence adduced after this lawsuit was filed (i.e., deposition testimony), that Jillian continued to suffer from PTSD following her last appointment with Dr. Lippert and in fact still exhibits symptoms to this day. Second, she asserts that State Farm neglected to conduct an adequate investigation into Jillian's damages prior to making its settlement offer.

The first argument is simply not relevant to the claim of bad faith. When all is said and done, it may be established that Jillian continues to suffer from PTSD and is rightly entitled to more compensation under Plaintiff's UIM coverage. This is likely a question most appropriately put to a jury. However, Plaintiff cannot rely on evidence developed well after the fact in order to establish that State Farm acted in bad faith. State Farm could only base its evaluation on the evidence available to it at the time. Plaintiff provided documentation to State Farm indicating that Jillian saw Dr. Lippert three times in July and August of 2015. Dr. Lippert's notes indicate that Jillian was showing signs of PTSD. Then, Jillian did not show for her appointment on August 19, 2015, and thereafter never again sought treatment for PTSD symptoms. As of Plaintiff's counsel's final pre-litigation discussions with State Farm, Jillian had received no treatment for PTSD for over a year. On this basis, State Farm concluded that there was no need to account for future medical expenses with respect to Jillian's PTSD. The depositions cited by Plaintiff, and upon which Plaintiff now relies to argue that Jillian's PTSD was never resolved, were taken in March, April, and May of 2017, and therefore have no bearing on whether State Farm had a reasonable basis for its settlement offer in August 2016.

The second argument, that State Farm failed to conduct an adequate investigation, is also unsuccessful. Plaintiff argues that State Farm acted unreasonably in investigating Jillian's claim because it did not request an independent medical evaluation and did not speak directly with Jillian's mother or grandmother to inquire about Jillian's PTSD. In her Response, Plaintiff gives prominence to the California Supreme Court case of *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082 (Cal. 2007), but *Wilson* just does not support a bad faith action on the facts presented here. Rather, *Wilson* stands for the uncontroversial proposition that an insurer should not simply disregard the opinion of a treating physician and deny coverage without at least obtaining a second opinion from an independent medical professional.

In *Wilson*, the defendant insurer disregarded a treating physician's opinion that serious injuries were "probably due to her recent automobile accident." *Id.* at 1087. Instead, the insurer concluded that the injury was probably not caused by the accident and rejected the claim, explaining that the plaintiff's "pain was due only to 'soft tissue injury superimposed by a preexisting degenerative condition.'" *Id.* The insurer reached its conclusions despite having "no medical report or opinion on the basis of which the claims examiner could reasonably have ignored or disbelieved [the treating physician's] conclusion that the changes in Wilson's cervical spine were probably caused by her recent trauma." *Id.* Therefore, the California Supreme Court held that a reasonable jury could find that "nothing in the material the claims examiner had received justified these conclusions." *Id.* at 1087–88.

The circumstances of this case are not analogous to those of *Wilson*. There is nothing in the record to indicate that State Farm relied on anything other than the documentation presented to it by Plaintiff and Plaintiff's counsel. State Farm did not disregard any material it received from Plaintiff, but rather accepted the conclusions of her treating physicians and fully accounted for all of Plaintiff's past medical expenses without discount. State Farm took Jillian's medical

expenses and diagnoses at face value, and gave credit to medical bills consistently and completely, without disputing the extent or causal link of a single injury. Of course, this dispute centers on the value of Jillian's future damages for PTSD. However, as of the parties' final negotiations in August 2016, Plaintiff had presented no documentation to State Farm substantiating the need for future treatment. Indeed, the material provided indicated that: (1) Jillian was no longer thinking about the accident as of her third appointment with Dr. Lippert on August 6, 2015 (Dr. Lippert's Session Notes 5, ECF No. 45-5); (2) Jillian did not show up for a scheduled appointment with Dr. Lippert on August 19; and (3) Jillian did not seek any additional treatment for PTSD from August 6, 2015, through the date of the parties' final pre-litigation negotiations on or about August 18, 2016. Plaintiff does not attempt to refute these facts in her Response.

While it is true, as *Wilson* shows, that an insurer cannot ignore medical evidence submitted by a claimant for the purpose of substantiating her claim, the insurer's duty to investigate does not obligate it to seek out substantiating evidence that the claimant has neglected to provide. Here, Plaintiff failed to supply State Farm with documentation to indicate that Jillian's PTSD was ongoing. In fact, all the material Plaintiff did provide strongly suggested that Jillian no longer suffered from PTSD. On this record, no reasonable juror could conclude that State Farm did not have a reasonable basis for challenging Jillian's claim of future damages related to PTSD.

State Farm's settlement offer was also not so low as to constitute evidence of bad faith. State Farm's final settlement offer represented a valuation of $111,000—including the $105,000 offset—on the basis of actual medical special damages totaling only $16,710.98. Of course, all compensation in excess of the value of Jillian's medical expenses is comprised of general damages for pain and suffering. "[B]ecause non-economic damages have no objective measure, a

defendant in most cases cannot be liable for bad faith purely due to failing to pay these alleged damages. In a case where it should be clear to an insurer that the covered incident resulted in some pain and suffering, an offer of $0 could result in a finding of bad faith." *Skach v. AAA N. California, Nevada & Utah Ins. Exch.*, No. 3:12-CV-00464-RCJ, 2014 WL 5324096, at *4 (D. Nev. Oct. 17, 2014). However, where a plaintiff receives a large sum of money for her pain and suffering and an insurer refuses to pay more—even though a jury might eventually award more under a breach of contract claim—such circumstances will not implicate bad faith. *See id.*

In sum, State Farm satisfied its initial burden on defensive summary judgment, and Plaintiff has failed to establish a genuine dispute of material fact. In the context of Plaintiff's breach of contract claim, a jury may reasonably determine that Jillian is entitled to greater benefits under Plaintiff's UIM coverage; however, the Court finds no evidence of bad faith.

### b. NRS 686A.310

Pursuant to the Unfair Claims Practices Act, NRS 686A.310, an insurer's action is considered an unfair practice if it engages in one or more of the following activities:

> (a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
>
> (c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.
>
> (d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.
>
> (e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.
>
> (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

(g) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application.

(h) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, or the representative, agent or broker of the insured.

(i) Failing, upon payment of a claim, to inform insureds or beneficiaries of the coverage under which payment is made.

(j) Making known to insureds or claimants a practice of the insurer of appealing rom arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

(k) Delaying the investigation or payment of claims by requiring an insured or a claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(l) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(m) Failing to comply with the provisions of NRS 687B.310 to 687B.390, inclusive, or 687B.410.

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

(o) Advising an insured or claimant not to seek legal counsel.

(p) Misleading an insured or claimant concerning any applicable statute of limitations.

Nev. Rev. Stat. § 686A.310(1). "Unlike a cause of action for bad faith, the provisions of Nev. Rev. Stat. § 686A.310 'address the manner in which an insurer handles an insured's claim whether or not the claim is denied.'" *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp.

2d 1223, 1236 (D. Nev. 2010) (quoting *Schumacher v. State Farm Fire & Cas. Co.*, 467 F. Supp. 2d 1090, 1095 (D. Nev. 2006)).

In her Complaint, Plaintiff alleges violations of subparts (c), (e), (f), (l), and (n). State Farm addresses each subpart in its Motion. In contrast, Plaintiff does not attempt specifically to refute State Farms' summary judgment arguments, but rather asserts generally that "State Farm's arguments are not sufficient to entitled [sic] it to summary judgment." (Resp. 19, ECF No. 46.) Plaintiff further states: "Defendant essentially repeats the same arguments it has made with respect to the common law claim for bad faith, which Plaintiff has refuted above. Thus, as with the common law bad faith claim, Defendant's motion should be denied." (*Id.* at 19–20.) Therefore, Plaintiff has failed even to identify the factual bases upon which she asserts her claims under NRS 686A.310, except possibly to the extent they are the same as the factual bases underlying her claim of bad faith. This does not bode well for Plaintiff, as the Court has already concluded that summary judgment is warranted on the facts asserted with respect to the claim of bad faith, having found that State Farm's investigation was not inadequate, that it had a reasonable basis for its settlement offer, and that the amount of its settlement offer was not indicative of bad faith.

Moreover, the only evidence in the record to support Plaintiff's claims under NRS 686A.310 is the written opinion and deposition testimony of Plaintiff's claims handling expert, James Catalani, Esq. (*See* Catalani Op., ECF No. 45-10; Catalani Dep., ECF No. 45-11.) First, Mr. Catalani has opined that State Farm violated subpart (c) by failing to conduct an adequate investigation concerning the extent of Jillian's PTSD, because State Farm did not take up Plaintiff's invitation to examine Jillian's grandmother under oath. (Catalani Dep. 110:2–113:8.) As discussed above, State Farm was not required to make this proactive examination. If Jillian's grandmother had relevant information to substantiate the insurance claim, Plaintiff's counsel

could easily have submitted a statement or declaration. However, State Farm was not disputing any materials it had received from Plaintiff or Plaintiff's counsel, and its decision not to seek substantiation of Plaintiff's claims beyond those materials was not a violation of its duty to conduct an adequate investigation.

Next, Mr. Catalani opined that State Farm violated subparts (e) and (f) because its valuation of general damages for Plaintiff's PTSD and concussion was unreasonable. (*Id.* at 102:4–18, 104:12–105:11.) As discussed above, Plaintiff has not presented admissible evidence indicating that State Farm's valuation of Jillian's general damages was unreasonable, unfair, or inequitable.

In his deposition, Mr. Catalani admitted that State Farm did not violate subpart (l). (*Id.* at 113:10–13.) In response to this motion, Plaintiff has made no argument and identified no facts to support its allegation that State Farm violated subpart (l).

Lastly, Mr. Catalani opined that State Farm violated subpart (n) because it made an unreasonable settlement offer that it should have realized had no chance to settle the case. In essence, "[t]he offer was unreasonable and it was based on an unreasonable evaluation." (*Id.* at 105:12–109:2.) Therefore, the basis for this alleged violation is essentially the same as for subparts (e) and (f). Furthermore, under subpart (n), an insurer "is not required to have a 'reasonable basis' for its denial; rather, it must give a prompt, reasonable explanation of the basis for its denial." *Cordova v. Am. Family Mut. Ins. Co.*, No. 2:13-CV-1111-KJD-VCF, 2015 WL 3660329, at *7 (D. Nev. June 12, 2015). Here, the undisputed record shows that State Farm gave a prompt and reasonable explanation for its evaluation on several occasions, in multiple letters and telephone calls with Plaintiff's counsel.

Therefore, Plaintiff has failed to present admissible evidence of any of the alleged violations of NRS 686A.310. Summary judgment in favor of State Farm is appropriate.

## CONCLUSION

IT IS HEREBY ORDERED that State Farm's Motion for Partial Summary Judgment (ECF No. 45) is GRANTED.

IT IS SO ORDERED. SEPTEMBER 18, 2017.

_____
ROBERT C. JONES
United States District Judge